Filed 7/21/21  In re Shanon H. CA2/7

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Shanon H., a Person Coming Under the Juvenile Court Law. | B310659 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. S.M., Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP00567A) |

APPEAL from orders of the Superior Court of Los Angeles County, Pete H. Navarro, Juvenile Court Referee.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

S.M. (Mother) appeals the juvenile court's orders denying her Welfare and Institutions Code section 388[1] petition to obtain additional family reunification services and terminating parental rights to her two-year-old daughter, Shanon H.  Mother contends the court erred in denying her section 388 petition without a hearing and that error requires reversal of the order terminating parental rights.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Dependency Petition*

On January 28, 2019 the Los Angeles County Department of Children and Family Services (Department) filed a section 300 petition alleging Mother had a history of mental and emotional problems, including erratic and delusional behavior, that placed then-newborn Shanon at substantial risk of serious physical harm; the same unresolved mental health issues played a role in the termination of Mother's parental rights over Mother's older son in prior dependency proceedings;[2] Shanon's father, Chris H., suffered from severe intellectual disabilities that prevented him

_____

[1]    Statutory references are to this code unless otherwise stated.

[2]    The prior dependency proceedings involving Mother's older son resulted in two appellate decisions by this court:  *In re S.M.* (Aug. 20, 2014, B251450) [nonpub. opn.] and *In re S.M.* (Jan. 19, 2016, B264369) [nonpub. opn.].

from providing Shanon with regular care and supervision;[3] and both Mother and Chris had a history of domestic abuse that placed Shanon at substantial risk of serious physical harm. Following a hearing, the court ordered Shanon detained from both parents.

 2. *The Jurisdiction and Disposition Hearings*

 In its report prepared for the April 2019 jurisdiction hearing, the Department stated Mother was chronically unhoused—sleeping in bus terminals and train stations—and unable to provide regular care for Shanon. Mother also suffered from erratic thinking and delusions, which manifested in the belief hospital staff and the Department-approved visitation monitor were attempting to harm Shanon. Mother described to the social worker hearing voices that were not there, experiencing ghosts touching her body and seeing a rodent that was not in the room. Mother also explained she had stopped taking her prescribed psychotropic medication for her hallucinations because it had made her shaky and worsened her condition. Finally, the Department described an argument between Chris and Mother that was mutually physically combative.

 Mother testified at the jurisdiction hearing that she had been diagnosed with delusional thinking and depression in 2009 in connection with the prior dependency case involving her older son. However, she asserted her symptoms disappeared just before she became pregnant with Shanon and had not returned.

 The court dismissed the domestic violence allegations for lack of evidence, sustained as amended the remaining allegations pursuant to section 300, subdivisions (b) and (j), ordered both

---

[3] Chris is not the father of Mother's older son.

Mother and Chris to submit to mental health evaluations pursuant to Evidence Code section 730, and directed the Department to provide the results of those evaluations prior to the continued disposition hearing.

At the contested disposition hearing on May 29, 2019 the Department presented the Evidence Code section 730 evaluation from clinical psychologist Sara M. Hough, who diagnosed Mother as suffering from "a psychotic disorder. Her symptoms include a history of visual/auditory hallucinations, delusions, fixated thinking and poor judgment. . . . She lacks insight into her mental health challenges and believes that all the issues are the fault of the system and that people are trying to keep her away from her child without justification. . . . Mother does not appear to comprehend the complexities of raising an infant. Her lack of understanding is directly related to her mental health impairment. Mother does acknowledge a history of hallucinations and delusions, but she minimizes her symptoms and reports that she is currently asymptomatic. In the current examination her thinking was tangential, disorganized with bizarre content. Because of her current impaired mental status mother is not capable of independently caring for an infant." The evaluator recommended that Mother undergo a psychiatric evaluation for possible medication intervention and participate in individual counseling and parenting classes.

Following the hearing the court declared Shanon a dependent child of the court, finding by clear and convincing evidence no reasonable means existed to protect Shanon other than removal from her parents' care and custody. The court rejected the Department's request pursuant to section 361.5, subdivision (b)(10) and (b)(12), to deny Mother family

4

reunification services based on the termination of her parental rights over her older son and exercised its discretion to grant her family reunification services. As part of the court-ordered case plan, the court directed Mother to obtain psychiatric counseling in accordance with the recommendation of the Evidence Code section 730 evaluator. In addition, the court granted Chris family reunification services and ordered monitored visitation for both parents with individual counseling and parenting classes.

3. *The Six-month Review Hearing*

At the November 27, 2019 six-month review hearing (§ 366.21, subd. (e)), the Department recommended terminating family reunification services for both parents. The Department reported Mother had not acknowledged or addressed her mental health challenges and there was no basis to conclude she would ever be compliant with the case plan. Chris had been participating in parenting classes and counseling, the Department acknowledged; but there was no evidence he had benefitted, or was capable of benefitting, from them.

Mother contended she was in full compliance with the case plan. She had participated in individual counseling, completed parenting classes and, along with Chris, regularly visited with Shanon. She did not take psychotropic medication or seek specific psychiatric services because she did not believe she continued to have a mental health disorder. As to the diagnoses that suggested otherwise, Mother stated she was in the process of obtaining an additional psychiatric opinion and requested that her family reunification services be continued. Shanon's counsel supported both parents' request for continued family reunification services.

5

The court found both Mother and Chris had substantially complied with the case plan. The court ordered continued family reunification services for both of them over the Department's objection, explaining, "Father's issues are developmental in nature. Mother's issues are clinical psychiatric issues. And I think it sets a bad policy and practice to just throw in the towel when parents like this present these problems. It may—we may not get to that point given this situation where the parents would be able to safely take care of a toddler when the child is a toddler, but we should make the effort."

4. *The 12-month Review Hearing*

In its report prepared for the September 22, 2020 12-month review hearing (§ 366.21, subd. (f)), the Department stated Mother continued to refuse the Department's housing assistance and remained unhoused. As for Mother's mental health, the Department stated it had no information on Mother's progress because Mother also refused to provide that information. In addition, Mother told the Department she wanted a DNA test for Shanon, accusing hospital staff of switching Mother's baby with Shanon at birth, and claiming she had given birth to Shanon "from a tumor on [her] neck." The Department again recommended termination of family reunification services for both parents. This time, Shanon's counsel supported that recommendation.

The court terminated family reunification services for both parents. In making its ruling the court stated it "had spent a great deal of time searching for some factual legal basis to continue family reunification services but, also, was unable to do that. As to the Mother it is apparent that the Mother's mental illness symptoms remain unabated." The court ordered in-person

6

monitored visitation for both parents, provided they adhered to safety protocols required by the Covid-19 pandemic, and set the selection and implementation hearing (§ 366.26) for February 24, 2021.

5. *Mother's Section 388 Petition and the Section 366.26 Hearing Terminating Parental Rights*

On February 24, 2021, the date of the selection and implementation hearing, Mother filed a section 388 petition seeking additional family reunification services. Mother stated she had been attending psychiatric counseling and taking prescribed antidepressant medication. She alleged it was in Shanon's best interests to be returned to her custody so "we can continue to be a family and develop a strong family bond." Mother attached to her petition two letters from her medical providers: (1) a letter from Dr. Karine Tagmazyan, her primary care physician, that stated Mother had been under her care since August 2019, Mother had been taking an antidepressant prescribed by Dr. Tagmazyan since July 22, 2020, and Mother had recently reported feeling "much better"; and (2) an October 26, 2020 letter from Alison Altwer, a licensed family therapist in Kaiser Permanente's psychiatry department, that was addressed to Mother and confirmed Mother's appointment for November 16, 2020.

The court summarily denied the section 388 petition, stating, "The 388 [petition] speaks in conclusionary terms. There's no compelling evidence to indicate . . . that it merits a formal hearing. I can accept the representations made that the Mother appears to be engaged in therapy with Kaiser [Permanente Hospital] and is under psychiatric care. But that,

in itself, does not provide sufficient information to grant a hearing on this application."

Proceeding to the selection and implementation hearing, the court terminated Mother's and Chris's parental rights and transferred the care, custody and control of Shanon to the Department for adoptive planning and placement.

## DISCUSSION

1. *Governing Law and Standard of Review*

Section 388 provides for the modification of juvenile court orders when the petitioner presents new evidence or a change of circumstances and demonstrates modification of the prior order is in the child's best interests.  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Samuel A.* (2020) 55 Cal.App.5th 1, 6-7.)  To obtain a hearing on a section 388 petition, the parent must make a prima facie showing as to both elements.  (*In re Samuel A.*, at p. 7; see *In re K.L.* (2016) 248 Cal.App.4th 52, 61; see Cal. Rules of Court, rule 5.570(d).)

The petition must be liberally construed in favor of granting a hearing, but "[t]he prima facie showing is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re J.P.* (2014) 229 Cal.App.4th 108, 127; accord, *In re Samuel A., supra,* 55 Cal.App.5th at p. 7; *In re K.L., supra,* 248 Cal.App.4th at p. 61.)  "The petition may not consist of 'general, conclusory allegations.' [Citation.]  'Successful petitions have included declarations or other attachments which demonstrate the showing the petitioner will make at [the] hearing. . . .' [Citation.]  When determining whether the petition makes the necessary showing, 'the court may consider the entire

8

factual and procedural history of the case.'" (*In re Samuel A.*, at p. 7; accord, *In re K.L.*, at p. 62; see *In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.)

When a section 388 petition is filed after family reunification services have been terminated, the juvenile court's overriding concern is the child's best interest. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) The parent's interests in the care, custody and companionship of the child are no longer paramount; and the focus shifts to the needs of the child for permanency and stability. (*Ibid.*; *In re Vincent M.* (2008) 161 Cal.App.4th 943, 955.) Because time is of the essence for young children when it comes to securing a stable, permanent home, prolonged uncertainty is not in their best interest. (See *In re Josiah Z.* (2005) 36 Cal.4th 664, 674 ["'[t]here is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home," under the care of his parents or foster parents, especially when such uncertainty is prolonged'"]; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531 ["our Supreme Court made it very clear in *Jasmon O.*[, *supra*, 8 Cal.4th 398] that the disruption of an existing psychological bond between dependent children and their *caretakers* is an extremely important factor bearing on any section 388 motion"].)

We review the summary denial of a section 388 petition for abuse of discretion. (*In re K.L., supra,* 248 Cal.App.4th at p. 61; *In re G.B.* (2014) 227 Cal.App.4th 1147, 1158.) We may disturb the juvenile court's exercise of discretion only in the rare case when the court has made an arbitrary, capricious or patently absurd determination. (*In re Stephanie M., supra*, 7 Cal.4th at p. 318.)

9

2. *The Court Did Not Abuse Its Discretion in Summarily Denying Mother's Section 388 Petition*

The Department argues Mother presented no new evidence or change of circumstances in support of her petition for additional reunification services, thereby failing to satisfy the first element of a prima facie showing of entitlement to relief. Evidence Mother was taking an antidepressant prescribed by her primary care doctor, the Department explains, was included in its report prepared for the 12-month review hearing.  In addition, evidence that Mother had received some mental health therapy in the form of individual counseling was also received at that 12-month review hearing.  Although the October 26, 2020 letter from Altwer confirming a November 2020 appointment was new in the sense it was created after the September 2020 12-month review hearing, it merely confirmed Mother had made an appointment.  No information as to Mother's condition or even whether she had attended any appointments was provided.

The juvenile court did not specifically state whether Mother had satisfied the first prong of the section 388 inquiry, and we need not resolve that question.  Assuming, as the juvenile court apparently did, that Mother's petition established some recent participation in psychiatric services, which would be new evidence or a change of circumstances, the court found that evidence too thin to support a prima facie case that additional family reunification services would be in Shanon's best interests. (See *In re J.C.* (2014) 226 Cal.App.4th 503, 527 [a parent's petition to reopen reunification efforts "must establish how such a change will advance the child's need for permanency and stability"]; see also *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 225 ["a section 388 order for reunification services at this late

10

date would deprive [the child] of a permanent, stable home in exchange for an uncertain future"]; Cal. Rules of Court, rule 5.570(d)(1) [juvenile court may summarily deny section 388 petition that fails to show a change of circumstances or new evidence that demonstrates a modification of a prior order would promote the best interests of the child].)

"[B]est interests is a complex idea" that requires consideration of a variety of factors. (*In re Kimberly F., supra*, 56 Cal.App.4th at p. 530; see *In re Jacob P.* (2007) 157 Cal.App.4th 819, 832-833.) As discussed, after the termination of family reunification services, a parent's interests are no longer paramount. Rather, the focus shifts to the needs of the child for permanency and stability, and a rebuttable presumption arises that reinstating services for a parent and potentially jeopardizing a permanent plan of adoption is not in the best interest of the child. (See *In re Marilyn H.* (1993) 5 Cal.4th 295, 309-310.)

Viewed in the context of all the evidence in the juvenile court's record, Mother's evidence fell far short of making such a prima facie case. Throughout these (and prior) dependency proceedings, Mother demonstrated a fundamental lack of insight into her mental health condition and its effect on caring for her young child. She had denied suffering from a psychiatric disorder, despite diagnoses of schizoaffective disorder and psychotic disorder, and long resisted psychiatric treatment even when psychiatric intervention was suggested by both her prior therapist and the Evidence Code section 730 evaluator and ordered by the court as part of the case plan.

The juvenile court credited all the information Mother provided with her section 388 petition, but found, even if it were

11

proved, it was far too little to rebut the presumption that permanency and stability, not continued reunification, was in Shanon's best interests. The court did not abuse its discretion in summarily denying Mother's section 388 petition for failure to state a prima facie case for modification of the court's prior order terminating family reunification services. (See *In re Anthony W.* (2001) 87 Cal.App.4th 246, 252 ["children should not be made to wait indefinitely for mother to become an adequate parent"]; *In re Edward H.* (1996) 43 Cal.App.4th 584, 594 ["the prospect of an additional six months of reunification to see if the mother [could comply with her case plan objectives] would not have promoted stability for the children and thus would not have promoted their best interests"].)[4]

## DISPOSITION

The orders denying Mother's section 388 petition and terminating her parental rights are affirmed.

PERLUSS, P. J.

We concur:

SEGAL, J.                              FEUER, J.

---

[4] Mother argues reversal of the order summarily denying her section 388 petition also requires reversal of the order entered the same day terminating her parental rights. Because we affirm the order summarily denying Mother's section 388 petition, Mother's challenge to the order terminating her parental rights also fails.

12